Shaw, C. J.
This was an action of assumpsit, brought to recover the sum of $71.85, with interest, which the defendants received from the plaintiff, under protest, as the amount *234 of a tax assessed upon him, and it comes before the court upon an agreed statement of facts. The plaintiff is the owner of a vacant lot of land on Broadway and G streets, in South Boston. On the 21st of April, 1849, George E. Bent and others, interested in lands abutting on Broadway, petitioned the mayor and aldermen of the city, that a drain might be laid from Dorchester street, easterly through Broadway, to the estate of Mrs. Burrill. The plaintiff was not one of the petitioners. On the thirtieth of April the mayor and aldermen ordered the sewer to be laid, and notice to be given that, on the 7th of May, they would consider the subject of assessing the expense thereof on all persons who might enter their drains into such sewer, or, by any more remote means, receive any benefit from it, and that all persons objecting would then be heard. On the 7th of May, it appearing that notice had been given agreeably to the order, and no objection being made, the subject was referred to the Committee on Sewers and Drains, with full powers to have said sewer made and assessed according to law. The sewer was then constructed under the direction of this committee, extending east-wardly to the lot next beyond the vacant lot of the plaintiff, and, on the 16th of July, 1849, the superintendent of common sewers having made his report on the subject to the mayor and aldermen, they passed an order as follows, viz : —
“ Whereas, pursuant to an order of this board, passed on the seventh day of May, 1849, a common sewer has been constructed in Broadway, above Dorchester street, the cost of which was seven hundred eighty-three dollars and sixty-five cents, one quarter part whereof being deducted, to be paid by the said city, there remains five hundred eighty-seven dollars and seventy-four cents, to be charged to persons benefited by the same, according to law. It is, therefore, ordered, that the persons named in the schedule hereunto annexed, being benefited as aforesaid, be and they hereby are charged and assessed with the sums therein set to their respective names, as their proportional part of the expense of the said sewer, and the same is ordered to be certified, and notice thereof given to the parties aforesaid, their tenants or lessees.”'
*235 The report of the superintendent set forth the names of the owners of the land benefited, the number of feet owned by each, the value of the land a foot, and the valuation and assessment of each. Mr. Wright’s lot was seven thousand feet, valued at fifty cents a foot, and his contributory share was fixed at $69.95. An order was then issued for the collection of the tax so assessed, and he paid his share, under protest, with costs to the collector. It is further agreed that the plaintiff’s vacant lot abuts on Broadway and G street, that the drain passes his lot, and that, upon Mrs. Bumll’s lot adjoining his, there is a dwelling-house. There is no dwelling house between Mrs. Burrill’s and G street, and it is agreed that a plan of the land, annexed to the agreement, shall be a part of the case. From this plan, it appears that the plaintiff’s land is estimated, for the purpose of taxation, to extend only seventy feet back from Broadway, although the lot belonging to him includes a great deal more, that strip of seventy feet wide being all that was supposed to be benefited by the drain. It is admitted that the plaintiff has not used the drain, and that his land is not drained by it. The parties also agree that if, upon this statement, the court are of opinion that the plaintiff can maintain his action, judgment shall be entered for the plaintiff, with interest from payment, otherwise he shall become nonsuit.
There were here various lots intended to be benefited by the drain, some of them having houses upon them, others not. The case of Downer v. Boston, 7 Cush. 277, was similar to the one before us, in this respect, if not in all; and many of the questions discussed in this case were considered and decided in that.
We exclude from our consideration of this case, all provisions of law relating to the draining of low or waste lands The statutes on that subject have no reference to this case. The statutes which we are to consider are provided for the draining of houses. The public have, indeed, some interest in such draining, on the grounds of health and general convenience ; but it is not mainly with those views that these statutes have been framed. Prior to the year 1834, this subject *236 was unsetttled. K drains were desired, they were petitioned for, and the cost of making them was assessed and apportioned among those engaged in the common enterprise, according to previous agreement. If there were vacant lands or houses, whose owners did not choose to take advantage of the drain, no assessment was laid upon them. The drains were then the common property of those who paid for them, and records were kept, in order that it might be known to whose benefit they enured, and to whom were to be paid the contributions of those who might Subsequently take advantage of them. In 1834, main drains were made public property, and were to be so held. In 1840, the case of Boston v. Shaw, was decided, which arose out of the making of a drain in Pinckney street, and the assessment of a tax was made in proportion to the valuation of the estates bordering on the drain, on the owners thereof. The tax was assessed according to rules established by the city, and when the case came before the court, it was considered that the by-law was invalid ; and the court took occasion to indicate what it deemed the proper course to be taken. In that case, it was suggested that the tax should be assessed on all the persons benefited, not merely upon those who had built on their land, but upon those who might afterwards build as well. The potentiality of receiving a benefit from the sewer was the thing to be charged with the tax. This added a value to the land in prcesenti, either for the purpose of sale or improvement. By the statute of 1841, c. 115, all who enter on the drain, or who receive any benefit from it, are subject to be assessed for it. The statute also provides that the selectmen of towns, or the mayor and aldermen of cities may lay and repair main drains or common sewers, and, when made, they shall be the property of the town or city. This last provision applies as well to drains previously made, and belonging to private individuals, as to those subsequently to be constructed. With regard to the former class, all that the city or town can require is a small sum from each person benefited, for the privilege of entering upon the drain. As to those which are to be built hereafter, all persons benefited, whether by entering *237 the drain or by any more remote means, are to be assessed for it. The land is estimated for this purpose, with reference to its capacity to be benefited by a drain, and it is taxed, not according to the value of the building upon it, but according to the value of the land, without reference to any building; thus putting house-lots actually built upon, and vacant lots, equally capable of being built upon, and adapted, if not intended, for that purpose, on an equal footing.
There are other provisions of law, founded on the right of the public to preserve the general health and repress nuisances, under which selectmen are authorized to require the owner of a house, so situated that it may be drained, and, without draining, is dangerous to health or generally offensive, to enter a drain from such house into the common sewer; and, if he does not do so, to do it for him, and require him to pay the expense. The second section of the act of 1841, provides that every person who may enter his drain into the common sewer, or who, by any more remote means, shall receive any benefit thereby, shall pay to the town or city a proportional part of the charge of maldng and repairing the common sewer, to be ascertained and assessed by the selectmen or the mayor and aldermen, and certified to the party to be charged. And the argument is, that this charge is to be assessed only on those who are immediately benefited, because there are other provisions under which those who enter their drains into the common sewer are chargeable at the time of entering. There are three classes of persons to receive this benefit. (1) Those who have houses, but who do not desire to enter their drains into the sewer. (2) Those who have lots with no buildings upon them ; and (3) Those who have houses, with drains with which they do wish to enter.
It is provided by the city ordinance, that this last class shall pay, at once, not less than ten dollars, for a permit to enter. The statute further provides, that all assessments so made for common sewers, shall constitute a lien upon the real estate assessed, for one year, and if the same are not paid within three months, they may be levied by sale of the estate. This goes to show, that the cost of the drain is to be assessed *238 forthwith on all the estates which may be beneficially affected by its construction. The city is to pay at least one fourth part of the expense. The city of Boston, under its ordinances, pays just one fourth. No security for the tax is given by law, beyond the lien for one year. The statute thus gives simply a reasonable time for enforcing payment. It therefore indicates its purpose to be, that the whole expense, deducting the city’s one fourth, shall be immediately assessed at the outset. The persons then benefited must pay at once, and no provision is made for reimbursing the city the expenses incurred for the benefit of vacant lots. This lien, and this want of any provision for payments being made subsequently, go strongly to show the intent of the statute to be, that the whole expense shall be paid forthwith.
In pursuance of this act, which allows a large discretion to the mayor and aldermen, an ordinance was passed by the city of Boston. It was certainly fit that the matter should be regulated by an ordinance, but a question has arisen respecting the reasonableness of that ordinance. Its first section directs the position, size and depth of the drains, and the mode of their entrance laterally into the sewer.
It goes on to make certain provisions, which the mayor and aldermen have the right to make, in regard to the making of drains for recusant owners, where the public health requires it, and further provides a penalty for the entering of drains, without a permit, and gives authority to an officer, the superintendent of sewers, to grant such permits, for which such sum, not less than ten dollars, as the mayor and aldermen shall prescribe, shall be paid by the persons to whom such permits are granted. The general expenses of making any drain are to be ascertained and reported to the Board, and after a deduction of not less than one fourth of the whole expense, the balance is to be assessed, according to their value, independently of the value of any buildings upon them, upon the estates benefited, and charged to the owners thereof. This question arose in the case of Downer v. Boston. The same point was made there, and it was urged that no persons were to be charged with a share of the expense of *239 any drain, except those presently and immediately benefited by it.
Mr. Downer had not, previously to the trial, derived any immediate benefit from the drain in that ease by actual use ; but the court held that the lots owned by him were benefited, by more remote means than the immediate entering of a drain, by fitting it for improvement and enhancing its value, and, therefore, that he was liable to the tax assessed.
It is said that the plaintiff has received no benefit whatever till he has entered a drain from his land, and that he is liable to be assessed when he does so enter it. This latter objection, we think, is founded upon a mistake. The charge made for entering the drain afterwards, is merely to cover the expense of taking up the street, and other proceedings, made necessary by the entry.
For the tax on all who are remotely as well as immediately benefited by the drain, there are several reasons. In the first place, there would necessarily, upon the system contended for, be a disproportionately large charge on those who are immediately concerned, for the reimbursement of whom no provision is made; while, upon the construction which the court have adopted, the tax is as nearly equal in its pressure as it could be made. And again, the laying of the drain is an immediate benefit, in one sense, to the vacant lots which it is capable of draining, if it increases their value for improvement or sale, as it obviously would; and, for these reasons, buildings are excluded from the assessment, and it it-laid only upon the lots. The proportion intended by the statute is the proportion among the lots ; and a tax laid upon them is to be made in proportion to their value. This brings the whole transaction within the provisions of the statute, and in this way all are taxed upon the same just and equal principle, with reference to the benefit conferred at the time.
It is next urged that the mayor and aldermen did not adjudicate the question of laying a sewer, according to the provisions of the city ordinance. But their, order, upon a regular petition, setting forth that the safety and convenience of the city required such a main drain, directing it to be laid, is a *240 sufficient adjudication. The objection that the tax is not proportional is disposed of by the considerations before expressed, if it was made according to the value of the lots at the time ; and nothing appears to the contrary.
Another argument is, that the tax is unjust and contrary to the true principles of taxation, if laid upon land, exclusively of the value of the buildings upon it. If this were a general tax on property, to raise money for public use, there is no doubt it would be so. But it is not the case. The assessment is laid upon the lands specially and exclusively benefited by the drain, upon the simple principle of equalizing the expense upon those who enjoy its advantages. A similar construction is given to similar English statutes. Soady v. Wilson, 3 Ad. & El. 248. A further objection is, that if the tax is on the lots alone, and not on real estate generally, the lien must be coincident with it, so that there will be a lien on the land and not on the buildings upon it. But doubtless the lien affects the whole estate, because the buildings are fixtures, inseparably included with the land, as making part. But this does not prevent the land from being valued separately, for a special purpose, nor from making the estate chargeable with a lien for the assessment.
There are several other remarks of counsel which have not escaped our attention., The case has been very fully argued. The case in New York of The People v. The Mayor, &c. of Brooklyn, 6 Barbour, 209, has also been considered. It appears by that case, that it has been the practice in New York, to make public improvements, sometimes very extensive, in particular localities, and assess the expense upon, the owners of real estate in their vicinity, supposed to be benefited. Streets, squares, and the like were frequently so laid out, and probably, the practice was, occasionally, a very great source of oppression to the parties assessed. Improvements like this, and others in their nature public, are held to have been prohibited by the new constitution of that state. But this case goes much beyond any ground we have ever taken in this state. The principle generally adopted here is, that public improvements, although local, must be paid for at the public *241 expense. Common highways are so made, and it is for the public to decide where and how they shall be made. This term “ the public ” may mean, in such cases, the inhabitants of the town, the county, or the state, according to the connection in which it is used. The proprietors of common lands, common fields, or waste or low lands, have sometimes been allowed by .aw to associate as quasi corporations, for the purpose of man aging their property, in which they have certain interests in common.
In these associations, where expenses are incurred for the common benefit, provision is made for assessing them equally, in proportion to their respective interests, nor can this be con sidered inequitable.
These cases are, perhaps, not in all respects strictly analogous ; and yet they involve the same principle on which it rests, which is, that when certain persons are so placed as to have a common interest amongst themselves, but in common with the rest of the community, laws may be justly made, providing that, under suitable and equitable regulations, those common interests shall be so managed, that those who enjoy the benefits shall equally bear the burden. This principle appears to be a sound and legitimate one, and has been too long acted upon in this commonwealth, to be now set aside. We are of opinion, therefore, that the statute was valid, the bylaw was made pursuant to its authority, and that, under them, the plaintiff was rightly assessed for his proportion of the cost of the drain in question.
But, to avoid being misunderstood, we think it proper to add, that if the views of the court had been other than they are, upon the grounds above stated, we are strongly inclined to the opinion, that this action for money had and received could not be maintained, unless, indeed, the act had been held wholly unconstitutional, inoperative and void.
The only ground upon which a party is allowed to pay a tax or assessment under protest, and afterwards maintain an action to recover it back, is when the tax was wholly void, a mere nullity; when a party can have no action or take no appeal, and when the collector appears with his warrant, he *242 must pay or have his person arrested or property taken, then he pays under a species of duress ; and as the tax was whollj void, as, when the party was not an inhabitant alad not liable to pay any tax, the city or town into whose treasury it has been paid, cannot equitably retain it. Preston v. Boston, 12 Pick. 7; Boston Water Power Co. v. Boston, 9 Met. 199; Howe v. Boston, 7 Cush. 273; Lincoln v. Worcester, 8 Cush. 55.
For any defect or irregularity in the course of proceeding in making the assessment, any ground of objection, which does not go to show the whole proceeding a nullity, he must take his appeal, if he has one. On such an appeal, he would have all the benefit of a jury trial, the instructions of a court in matters of law, with a right to come to this court to decide on matters of law, as in other questions of contested right. The law in this case, St. 1841, § 4, gives the party such right of appeal.
The case of Downer v. Boston is no authority, nor would it have been if.the tax payer had recovered. It was not an action to recover back; it was an appeal from the judgment of the court of common pleas, affirming the correctness of the proceedings in assessing and levying the tax.
It is not, however, necessary to express any opinion on this subject, because the cause is decided on other grounds.

Judgment for the defendants.